# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:09-cr-00265-OWW-SMS |
| Plaintiff, | |
| v. | |
| JUSTIN PAUL GLADDING, | FINDINGS AND RECOMMENDATIONS RECOMMENDING  DECLARATION OF FORFEITURE AND SET-ASIDE OF BOND, AND REMISSION OF FULL AMOUNT OF BOND TO SURETY |
| Defendant, | |
| and | |
| PATRICIA ROBB, | |
| Surety. | (Doc. 46) |

Plaintiff United States of America (the "government") has moved for an order declaring forfeiture of Defendant Justin Gladding's $100,000 bond.  Contending that justice does not require the bond's forfeiture, Defendant counters that the forfeiture should be set aside and remitted under F.R.Crim.P. 46(f)(2) and (f)(4).  Surety Patricia Robb has not separately appeared.

This Court heard the motions on Wednesday, August 4, 2010.  United States Attorney Deanna Martinez appeared on behalf of the government; Marc Days, Assistant Public Defender, on behalf of Defendant.  Surety did not appear.  Having fully considered the applicable facts and

law, the undersigned recommends that the bond be declared forfeited, that the forfeiture be set aside, and that the full amount of the bond be remitted to Surety.

## I.     Procedural and Factual Background

Defendant is awaiting trial on criminal charges set forth in an indictment filed July 16, 2009 (Doc. 3).  Defendant was arraigned and remanded to custody on August 27, 2009 (Doc. 7).  On September 1, 2009, the Court ordered Defendant released from custody on a $100,000 bond, secured by real property located at 92 South Main, Wallingford, Vermont (Doc. 10).  The real property is owned by a third party, Surety Patricia Robb, who is Defendant's mother.

An order setting conditions of release was signed and filed on September 21, 2009 (Doc. 14).  Among other conditions of release, Plaintiff agreed not to use or possess a computer or access the internet by computer or other device unless approved by the Pretrial Services Officer (Doc. 14).  On October 30, 2009, the Court entered a pretrial release violation petition following Defendant's alleged unauthorized use of a computer (Doc. 16).  Following a contested hearing on November 16, 2009, this Court found no clear and convincing evidence that Defendant violated the conditions of release and entered an amended order setting conditions of release in which Defendant agreed not to possess alcohol (Docs. 21, 22).

On December 15, 2009, the Court entered a pretrial release violation petition following Defendant's failure to report for a drug test on December 4, 2009 (Doc. 26).  On December 22, 2009, Defendant admitted the violation, and the Court amended the curfew condition of release to require home detention, with Plaintiff to be responsible for the additional monitoring costs (Doc. 29, 30).  As an additional condition of release, Defendant agreed to attend counseling for alcohol dependency, drug dependency, and/or depression (Doc. 30).

On January 11, 2010, after Defendant failed a drug test, the Court entered a third pretrial release violation petition (Doc. 32). An arrest warrant issued and bail was revoked (Doc. 33). Following Defendant's initial appearance on January 13, 2010, the Court ordered Defendant detained until further order (Doc. 34). On June 22, 2010, the government moved for forfeiture of bond (Doc. 46). Following bail review on June 23, 2010, the Court denied Defendant's release on bond (Docs. 47, 49).

## II.   Discussion

"Federal courts are authorized by Federal Rule of Criminal Procedure 46 ([f])(1) to order forfeiture of a bail bond upon a breach of a condition of release." *United States v. Vaccaro*, 51 F.3d 189, 191 (9th Cir. 1995). Federal Rule of Criminal Procedure 46 provides, in pertinent part:

**(f) Bail Forfeiture.**

   **(1) Declaration.** The court must declare the bail forfeited if a condition of the bond is breached.

   **(2) Setting Aside.** The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if:

      **(A)** the surety later surrenders into custody the person released on the surety's appearance bond; or

      **(B)** it appears that justice does not require bail forfeiture.

   **(3) Enforcement.**

      **(A) Default Judgment and Execution.** If it does not set aside a bail forfeiture, the court must, upon the government's motion, enter into a default judgment.

      **(B) Jurisdiction and Service.** By entering into a bond, each surety submits to the district court's jurisdiction and irrevocably appoints the district

>>clerk its agent to receive service of any filings affecting its liability.
>
>>**(C) Motion to Enforce.**  The court may, upon the government's motion, enforce the surety's liability without an independent action.  The government must serve any motion, and notice as the court prescribes, on the district clerk.  If so served, the clerk must promptly mail a copy to the surety at its last known address.
>
>  **(4) Remission.**  After entering a judgment under Rule 46(f)(3), the court may remit in whole or in part the judgment under the same conditions specified in Rule 46(f)(2).
>
> **(g) Exoneration.**  The court must exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture.  The court must exonerate a surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody.

### A.      <u>Forfeiture</u>

The principal purpose of a bail bond is to ensure the accused's appearance at the appointed time. *United States v. Toro*, 981 F.2d 1045, 1049 (9th Cir. 1992).  Nonetheless, forfeiture is not limited to an accused's failure to appear in court, but applies equally to an accused's violations of other conditions of his or her release.  *Vaccaro*, 51 F.3d at 192.  *See also United States v. Terrell*, 983 F.2d 653, 656 (5th Cir. 1993); *United States v. Santiago*, 826 F.2d 499, 505 (7th Cir. 1987); *United States v. Dunn*, 781 F.2d ___, 451-52; *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir. 1979)(per curiam); *United States v. Nolan*, 564 F.2d 376, 378 (10th Cir. 1977).  Because an order setting the conditions of release acts as a contract between the court and the accused, the court may order forfeiture upon the accused's breach of any of its conditions.  *Vaccaro*, 51 F.3d at 193.  Defendant has repeatedly breached the conditions of his release in their original form and as amended.  Accordingly, forfeiture of his bond is required by F.R.Crim.P. 46(f)(1).

B.     **Setting Aside**

A court is required to declare forfeiture of bond when a bailee breaches the conditions of his or her release. *United States v. Abernathy*, 757 F.2d 1012, 1015 (9th Cir. 1985). Nonetheless, F.R.Crim.P. 46 (f)(2) and (f)(4) authorize the court to set aside or remit all or part of the bond if it appears that enforcing the forfeiture will not serve the interests of justice. *Id.* The district court has broad discretion in determining whether or not to provide relief from forfeiture. *Stanley*, 601 F.2d at 382. "A district court abuses its discretion when it acts arbitrarily or capriciously." *United States v. Frias-Ramirez*, 670 F.2d 849, 852 (9th Cir. 1982).

The Ninth Circuit has set forth six factors for consideration in determining whether to set aside a forfeiture:

1.   The bailee's willfulness in breaching release conditions;

2.   The surety's participation in apprehending the bailee;

3.   The cost, inconvenience, and prejudice suffered by the government as a result of the bailee's breach;

4.   Mitigating factors or explanations offered by the bailee;

5.   Whether the surety is a professional or a member of the family or a friend; and

6.   The appropriateness of the amount of the bond.

*United States v. Nguyen*, 279 F.3d 1112, 1115-16 (9th Cir. 2002), *quoting United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602 (9th Cir. 1995).

A district court may enforce forfeiture even if it does not resolve all factors in favor of the government. *Abernathy*, 757 F.2d at 1015. *See also Stanley*, 601 F.2d at 382 (enforcing forfeiture despite no showing of costs or prejudice to the government). "These are merely non-exclusive factors for consideration, and '[n]ot all of the factors need to be resolved in the government's

favor.'" *United States v. Sar-Avi*, 255 F.3d 1163,1167 (9th Cir. 2001), *quoting Amwest*, 54 F.3d at 603.  Indeed, strict weighing of the facts would be produce an anomalous result because of the overlapping of the factors, particularly cost/inconvenience/prejudice with the propriety of the bond amount, and of mitigating factors, Surety's participation, and Surety's status.

**Willfulness.**  On December 22, 2009, Defendant admitted the second breach, failing to report for a drug test, and agreed to secure counseling and treatment of his substance abuse problem.  Thereafter, he was confined to his home..  On January 4, 2010, Defendant failed to report for a scheduled drug test.  On January 5, 2010, his urine tested positive for methamphetamine or amphetamines.  Following his arrest for this violation and consultation with his attorney, Defendant admitted both offenses.

In *United States v. LaJocies*, the sureties argued that drug abuse arising from the defendant's addiction should not be treated as a willful violation, but the court did not reach the issue, resolving the motion on other factors.  2007 WL 869692 (E.D.Cal. March 21, 2007)(No. Cr S-02-306 DFL DAD).  This court need not address the addiction question either since Defendant had earlier agreed to seek counseling for his drug abuse problem.  Defendant's failure to take the steps toward counseling, as he had agreed to do in the conditions of release, constituted a willful violation.  Accordingly, this factor weighs against set-aside and remission.

**Surety's Participation.**  When a defendant has breached the conditions of release in a manner other than failing to appear for court proceedings, how a surety could have participated is often unclear.  Accordingly, this factor is often irrelevant or of little weight in determining whether forfeiture of bond posted by a third-party is appropriate.

For example, in evaluating the propriety of remitting a forfeiture to two third-party sureties, Shaw and Draper, the Fourth Circuit examined the sureties' position in relation to the

defendant, who had feigned an auto accident and injury in order to postpone a court hearing scheduled for the next day. *United States v. Kirkman*, 426 F.2d 747, 751 (4th Cir. 1970). It reflected:

> It is difficult to conceive what they could have done to obtain Kirkman's presence at trial. It does not appear that they knew of and had opportunity to prevent him from conspiring with others to 'fake' an automobile accident and subsequent hospitalization. Once he had been hospitalized they could scarcely be expected to drag him to court. The district judge noted in his opinion that Shaw and Draper 'made no offer to have the defendant physically examined to determine whether his alleged injuries were real or imaginary, or to otherwise cooperate with the court in any respect.' But very soon after his failure to appear Kirkman was placed under guard in the hospital, and upon being discharged from the hospital, was kept in jail until he was tried. An examination by an independent medical specialist was accomplished. It is difficult to see what Shaw and Draper could have done that would have been helpful to the court.

*Id.*

The Fourth Circuit concluded that, because the interest of justice did not require enforcement of the forfeiture as to the two third-party sureties, the district court had abused its discretion in refusing to set aside the forfeiture of the amounts they had posted. *Id.* at 752.

Similarly, how Surety could have participated in this case is unclear. In pledging her property, her sole role was financial; she did not agree to act as Defendant's custodian. Since Surety lived in New England, she was unable to monitor Defendant's behavior on a day-to-day basis. Finally, since Defendant did not flee and was quickly arrested after he failed his drug test in January 2010, Surety had no opportunity to participate in Defendant's arrest. This factor weighs in favor of set-aside and remission.

**Expense, Inconvenience and Prejudice.** "The government is not required to prove the actual cost of defendant's breach: the bond amount is a form of liquidated damages in the event of a breach. *Sar-Avi*, 255 F.3d at 1168. *See also United States v. Parr*, 594 F.2d 440, 442 (5th Cir.

1979) (discussing the difficulty of calculating the government's search expense for the defendant, who had committed suicide at his ranch). The government need not furnish a bill of costs, and the Court may not disregard cost and inconvenience simply because they were not substantial. *Nguyen*, 279 F.3d at 1117. Nonetheless, the undersigned does not recommend that much weight be given to Defendant's breach of the release condition and prompt arrest.

Defendant's drug use did not prejudice the government and caused little harm to the public. *See United States v. LaJocies*, 2007 WL 869692 (E.D. Cal. March 21, 2007)(No. Cr. S-02-306 DFL DAD) (evaluating LaJocies' use of methamphetamine in violation of the conditions of his release). *Compare this case with Sar-Avi*, 255 F.3d at 1168 (in which government incurred substantial cost and inconvenience over the seven years that Sar-Avi remained in Israel, to which he had fled in violation of the conditions of his release); *Abernathy*, 757 F.2d at 1015 (in which the government incurred substantial expense and inconvenience after the defendants adopted new aliases and fled over 1500 miles); *Castaldo*, 667 F.2d at 21 (in which the government incurred considerable expense in a 170-day search for the defendant); *United States v. Knighton*, 9 Fed.Appx. 730, 732 (9th Cir. 2001)(in which government apprehended the defendant four months after he eloped and returned him Los Angeles, and sentencing was delayed six months).

At least two courts have held that full or partial set-off was appropriate when the defendant was found or re-apprehended shortly after breaching the conditions of release. *United States v. Parr*, 594 F.2d 440 (5th Cir. 1979); *United States v. Kirkman*, 426 F.2d 747 (4th Cir. 1970). In *Parr*, the Fifth Circuit found that the district court had abused its discretion in ordering forfeiture of the defendant's entire $75,000 cash bond because the defendant "willfully" failed to appear for sentencing after committing suicide at home. 594 F.2d at 444. Among other factors,

the appellate court noted that the cost and inconvenience relating to the government's four-hour search for the defendant was minimal. *Id.* at 441-42.

In *Kirkman*, the defendant's attempt to mislead the court and delay trial by feigning an auto accident was foiled almost immediately, and guards posted at the hospital pending his release. 426 F.2d at 751. Since the government almost immediately recognized and addressed the defendant's breach of the conditions of release, the circuit court held that the district court had abused its discretion in refusing to set aside the forfeiture of bond with regard to the third-party sureties. *Id.* at 752.

Because the government incurred little expense, inconvenience, or prejudice in arresting Defendant after he failed the drug test required as a condition of his release, forfeiture of his $100,000 bond appears grossly disproportionate and therefore, not required in the interest of justice. As Judge Kleinfeld opined in *Nguyen*:

> The $100,000 in security was probably designed to cover the expense of fetching Nguyen if he fled to a foreign country or otherwise put the government to great expense. But all Nguyen did was fail to show up at the marshal's office, and put the government to the minimal burden of telephoning and driving around town to get him. A hundred thousand dollars is a lot of money for doing nothing more than looking around town for less than three weeks before picking Nguyen up at his place of business and giving him a ride in a government car.

279 F.3d at 1118.

Here, the government's expense and inconvenience was even less than in *Nguyen*. Defendant failed his drug test, an arrest warrant issued, and Defendant was promptly arrested at his home. Forfeiture of the $100,000 bond is grossly disproportionate to the government's minimal cost and inconvenience.

**Mitigating Factors.** Mitigating factors include the Defendant's remaining on house arrest, and Surety's status as a nonprofessional and a family member, as well as Surety's lack of

complicity in Defendant's violations.  *See Nguyen*, 279 F.3d at 1117.  These weigh in favor of set-aside and remission.

**Surety's Status.**  A court must take into account whether the surety was a professional or a family member.  *Frias-Ramirez*, 670 F.2d at 852.  Precedent sets forth no clear rule regarding the treatment of family members acting as sureties.  In *Nguyen*, the majority declined to adopt the "loving relative" exception, as it categorized the policy articulated by Judge Kleinfeld in his dissent.  279 F.3d at 1117 n. 2.  Given the complicity of Nguyen's surety/family members, particularly the sister-in-law serving as both attorney and surety, in his scheme to avoid self-surrendering as agreed, however, the majority appropriately refused to conclude that the district court had abused its discretion in denying the motion to set aside the forfeiture of Nguyen's bond.  *See id.* at 1116-17.  Nonetheless, Judge Kleinfeld aptly summarized the argument for a district court's indulgence of innocent family members who have posted bond for a loved one:

> It is tragic when people post bail for a family member in trouble, only to be ruined for their kindness when their kin jumps bail.  Today's decision may affect a lot of common situations, as when people's children are arrested for drug crimes or their husbands or wives for drunk driving, embezzlement, or tax offenses.  If bail is set high enough to catch an international fugitive, but all that happens is that the criminal fails to show up . . . and is easily and locally caught, there is no good reason to forfeit so large an amount.
>
> The district court has the discretion to set aside the forfeiture or remit judgment on the forfeiture "in whole or in part" "if it otherwise appears that justice does not require the forfeiture."  What "justice requires" depends on the purpose of bail bonds.  The purpose of bail bonds is to make sure defendants show up in court, not to punish them or their families if they don't.  Here, the record supports the district court's determination that Nguyen willfully failed to appear, but that does not answer the question of whether it was an abuse of discretion not to remit the forfeiture in part.

*Nguyen*, 279 F.3d at 1118 (*footnotes omitted*).

///

In *LaJocies*, one surety was also the defendant's third-party custodian who failed to discharge his duty to supervise LaJocies. *LaJocies*, 2007 WL 869892 at *1. The other sureties had recklessly assured the court that they knew the defendant and had confidence in him, although, in truth, they barely knew him. *Id.* at *2. Accordingly, the court found that only partial remission of bond was appropriate.

"The purpose of a bail bond is not punitive. Its object is not to enrich the government or punish the defendant." *United States v. Parr*, 594 F.2d 440, 444 (5th Cir. 1979). A forfeiture should not be motivated by frustration or vindictiveness. *Id.*

**Amount of bond.** "The hallmark of a liquidated damages provision is reasonableness at the time the agreement is made rather than a calculation of actual provable losses when the breach occurs." *Amwest*, 54 F.3d at 604. Accordingly, the propriety of the bond amount considers whether the amount of the bond was properly determined at its inception. *Amwest*, 54 F.3d at 604. A court must determine whether the amount of the defendant's bail was appropriate in light of the offense(s) charged. *Frias-Ramirez*, 670 F.2d at 853. Here, Defendant's bail appears appropriate to ensure his appearance to answer to the serious charges against him. Accordingly, this factor weighs against set-off and release. Because Defendant breached a term of release other than reappearance in court, however, this factor is entitled to relatively little weight.

### III.   Recommendation

In accordance with the foregoing facts and analysis, the undersigned recommends that Defendant's bail be ordered forfeited, but that the forfeiture be set aside and the full amount of the bond be remitted to Surety. The undersigned further recommends that remission of the bond be conditioned upon Defendant's payment in full of all amounts due to the government for expenses incident to monitoring his period of home detention.

These Findings and Recommendations will be submitted to the Honorable Oliver W. Wanger, the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that, by failing to file objections within the specified time, a party may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 4, 2010**                              /s/ Sandra M. Snyder
                                                    UNITED STATES MAGISTRATE JUDGE